DRAPER *vs.* TRESCOTT.

29b 401
25ap517

A creditor, who has agreed with the principal debtor, without the consent of a surety, to extend the time of payment of the debt, for a usurious consideration paid at the time, cannot avail himself of the usury, as rendering the agreement invalid, when the agreement, and the usurious consideration, are proved by the surety for the purpose of establishing a defense that he is discharged from his liability. JOHNSON, J. dissented.

THIS action was commenced before a justice of the peace of the county of Livingston. The plaintiff complained in writing on a promissory note, made by the defendant Trescott and one Erastus Wilkinson, dated August 19th, 1850, whereby

they promised to pay G. F. Pratt or bearer, six months from that date, fifty dollars with interest.   The defendant answered 1st. General denial; 2d. Payment; 3d. Discharge of Trescott as surety; 4th. Usury; 5th. Statute of limitations.

The testimony on the trial disclosed the following facts: That the defendant Trescott, and Wilkinson, made said note; Trescott signing it as surety for Wilkinson, with the knowledge of D. R. Scott at the time, that he was such surety; that the note was negotiated by Wilkinson to Pratt the payee therein; that said Scott afterwards owned the note, and the defendant Trescott paid the same to him, by giving his (Trescott's) note for the note in question and some borrowed money; that the note in suit was delivered up by Scott to Trescott, and remained in his (Trescott's) hands several months; that afterwards the note was re-delivered by Trescott to Scott; that before such re-delivery Scott made an agreement with Wilkinson, the principal maker, to wait on him five years for payment on the note; in consideration of which agreement on the part of Scott to wait, Wilkinson agreed to pay interest on the 1st of April in each year, *and to pay, and did pay fourteen shillings, ($1.75,) over and above the interest, for Scott's waiting, &c.;* that *Scott got the note back again of Trescott in pursuance of such agreement to wait, &c.; after Trescott had paid and taken up the same,* and the note was re-delivered to Scott, without any knowledge of the said agreement on the part of Trescott.   Upon the foregoing testimony the justice rendered a judgment in favor of the plaintiff and against the defendant for $60.80 damages and $1.94 costs. From said judgment the defendant duly appealed to the Livingston county court, which court affirmed the judgment; and from such judgment of affirmance Trescott appealed.

*Wilkinson & Abbott,* for the appellant.

*G. Bulkley,* for the respondent.

Draper *v.* Trescott.

T. R. STRONG, P. J.   The question in this case is, whether a creditor who has agreed with a principal debtor, without the consent of a surety, to extend the time of payment of the debt, for a usurious consideration paid at the time, may avail himself of the usury, as rendering the agreement invalid, when the agreement and the usurious consideration are proved by the surety, for the purpose of establishing a defense that he is discharged from his liability.

It is declared by statute that all usurious contracts "shall be void;" and there is nothing in the language of the statute expressly qualifying those words; neither does the statute, in express terms, prohibit the creditor in such contract, or any natural person, from alleging and proving the usury when it may be for his interest to do so.   But in reference to this statute, as to all others, the courts seek to ascertain its spirit and meaning, and to so administer it as to accomplish the object of its enactment.   In numerous cases effect is given to some extent to contracts infected with usury; the word void is construed to mean voidable; and restriction is imposed in regard to making the objection of usury by other persons than the party paying, or contracting to pay, the usurious premium.   Many of those cases are referred to in *Dix* v. *Van Wyck,* (2 *Hill,* 522.)

The policy of the statute of usury is the protection of borrowers against oppressive exactions by lenders.   It is not essential to the promotion of this policy that other persons than the victim of the usurer, or persons standing in legal privity with him, should have the benefit of this statute; hence it is a rule well settled, that the objection of usury cannot be raised by a mere stranger to the usurious transaction.   If the borrower prefers, as the best for his interest, in his opinion, or as required by a proper regard for honesty, to abide by his agreement, there does not seem to be any good reason why he should not be permitted to do so.   He ought not to be compelled to accept the aid which the statute proffers, against the convictions of his judgment and conscience.   The law allows

him to pay the usurious debt, and will not aid him thereafter to recall what he has paid. So he may convey property in payment and the conveyance will be valid. On the same principle, he may waive the advantage of the statute; and it is a general rule that a person may waive the benefit of a statutory, or even of a constitutional, provision made for his advantage. And if the borrower does not insist upon the statute benefit, the lender ought certainly to be held to the contract. Like the party to a conveyance in fraud of creditors, he should not be heard to urge his own violation of the law as a reason why his agreement should be pronounced invalid. The borrower may do so, because such is the design of the statute; but it contemplates no favor to the usurer. There is a close analogy between the case of a usurer, and a party to a fraudulent conveyance, in respect to the right to claim a benefit from the usury or fraud. The usurious contract is declared void by statute; thereby, as the courts have held, meaning voidable, at the instance of the borrower and his privies. A fraudulent conveyance is declared by the statute to be void as to the creditors defrauded. The contract and the conveyance are alike illegal; but looking at the objects of the statutes, and limiting their operation to those objects, only those persons as to whom the contract or conveyance is void, can set up their illegality.

It is true that an agreement of extension, in order to discharge a surety, must be a valid agreement; one which the principal debtor might enforce against the creditor, and which therefore suspends the remedy of the surety to compel payment of the debt of the principal; but a usurious agreement is valid and may be enforced against the lender, and has such an effect upon the remedy of the surety, if the lender cannot make the objection of usury.

A distinction has been suggested between cases where the lender seeks to prove the usury to avoid the effect of the contract upon the liability of the surety, and cases where the surety proves the usury in making the defense of his discharge

Draper *v.* Trescott.

by the agreement; and it has been argued that if the usurer may not prove the usury for his advantage, he may have the advantage of it when proved by the surety. But this distinction has no foundation in principle. If the borrower may set up the usury, he may prove it for that purpose; and if he cannot set it up, he cannot avail himself of it when proved by his adversary. The argument in support of the distinction is, that as only a valid agreement will work the discharge of a surety, if the evidence given by the surety proves the usury, it shows an invalid agreement. But the answer is, as above stated, that it does not show an invalid agreement as against the usurer.

If a creditor who has agreed to extend the time of payment for a usurious premium paid, should commence a suit to collect the debt, it would be making the statute of usury a sword for slaying the borrower, whom the statute was specially designed to protect, if he could not defend the action upon his agreement. The extension contracted for might be more valuable to him than all the aid offered by the statute, and yet he would be refused it, and in addition lose what he had paid for it, if he omitted for a year after the payment to bring an action to recover back what he had paid beyond the legal interest.

It may be said that if the surety might avail himself of the agreement to give time for his discharge, the principal debtor might after the discharge of the surety, within a year, bring an action to recover back what he had paid; or if he had only promised to pay a usurious premium, that he might set up the usury in defense to an action on the promise, and that thus the usurer might lose both his claim on the surety and the consideration of the agreement; but the answer is, that this would be the penalty of his transgression.

In the present case, the usurious premium was paid at the time of making the agreement for further time; but it makes no difference in principle, in such cases, whether the premium beyond legal interest is paid down, or only agreed to be paid

in future. The promise to pay is a simple consideration for the promise to extend, if the lender cannot set up the usury; if he can set it up, whether the usurious consideration be paid, or only agreed to be paid, the promise to extend being executory, he may avoid it. In *Vilas* v. *Jones*, (10 *Paige*, 76,) a contrary doctrine is laid down, the agreement in the first case being held a discharge of the surety, but not in the latter. *Tudor* v. *Goodloe*, (1 *B. Monroe*, 322,) and *Kenningham* v. *Bedford*, (*Id.* 325,) are to the same effect; but the reasoning in the cases has failed to commend the distinction to my judgment.

The case of *Vilas* v. *Jones*, above cited, in the court of appeals, (1 *Comst.* 274,) throws some light upon the question under consideration, but does not decide it. The views of three members of the court are given, but no opinion on the subject is expressed by the court. The case of *La Farge* v. *Herter*, (4 *Barb.* 346; 11 *id.* 159; 5 *Seld.* 241,) is somewhat distinguishable from the present, but essentially aids the foregoing reasoning. The decision of the court of appeals, in that case, is put upon the ground that the agreement for the satisfaction of the judgment was executed. What is said in the prevailing opinion in that court, about the guilty party being entitled to the benefit of the usury, if his opponent alleges and proves it as a part of his own case, means simply that the usurer in such a case, as a general rule, occupies his former position. Whether he would thereafter have a remedy against the surety is not decided.

The plaintiff in this case is a purchaser of the note in suit from the holder, with whom the agreement for further time was made, subsequent to the maturity of the note and the making of the agreement; and of course he took the note subject to any defense which might have been made to it in the hands of the former; and has no greater rights in respect to the agreement than the former possessed. My conclusion is, that it is not competent for the plaintiff to avoid for usury

that agreement; and that by reason of the agreement the defendant, as surety, is discharged from such liability.

The judgment of the county court and that of the justice must therefore be reversed.

E. DARWIN SMITH, J. The only point presented in this case is, whether the surety is discharged from his liability by a usurious contract between the creditor and the principal debtor for the extension of the time of payment. This question was presented in several cases at the last term, and I have come in my own mind to the conclusion, as the result of all the cases cited and decided, that a contract otherwise unobjectionable, made between the principal debtor and the creditor for the extension of the time of payment, is valid when set up by the surety or by the debtor, to extend the time, and that it does not lie with the creditor who has received the consideration to allege the invalidity of the contract. He cannot be permitted at any time to set up, allege or prove that his contract is void. It is valid until the principal debtor—the borrower—elects to disaffirm it. The usurer cannot make such election. Usury as a defense, or an affirmative ground of action, is a personal privilege confined to the borrower alone and his representatives. (*Boughton* v. *Smith*, 26 *Barb. S. C. Rep.* 635.) This consideration seems to me to have been overlooked by the judges who express opinions in the case of *Vilas and Bacon* v. *Jones and others*, (1 *Comst.* 274.) But as there were other questions in that case, and as it does not appear, as the same is reported, that the court concurred in, or put the decision on, such opinions, I think we are at liberty to regard the point as an open one, and decide it according to our view of the question, upon principle. The argument on the other side of the question is that the surety must show a *valid* contract for the extension of the time of payment, to discharge him, and that a usurious contract is not a *valid* but a *void* contract, by statute. The error in this argument consists in holding that an usurious contract is *absolutely void*. The

cases under the usury laws of this state uniformly hold that the contract is valid as against all persons, except the victim of the usury; that it is voidable only at his election, and unless and until he elects to disaffirm it for the usury, it is to be held, treated and enforced every where, and as against all persons, as a valid contract. (*Post* v. *Bank of Utica*, (7 *Hill*, 391. 10 *Wheaton*, 367. 4 *Kernan*, 131. 2 *Comst.* 131. 26 *Barb.* 633.)

JOHNSON, J. (dissenting.)   The question presented by this case is, whether an usurious agreement, to extend the time of the payment of a note, or other obligation, can be enforced against the creditors, where such agreement is proved, and insisted upon as valid, by the other party.

The statute declares all such agreements void. Not void in favor of one party, and valid against the other; but void absolutely and unconditionally against every party, and in all courts. Being void, how can the courts enforce them ? Certainly they cannot, unless courts have some extraordinary power to make valid what the legislature have said should have no validity. The duty of the court is to administer the law, and whenever a contract is proved before it, which the statute declares void, it is the duty of the court so to pronounce it. Disregarding the statute is not administering it. I had supposed this question entirely settled in the case of *Vilas* v. *Jones*, (1 *Comst.* 274.) If however that case is not to be regarded as authority upon this question, the opinions of both the eminent judges, delivered in the case, ought to have no little weight upon this question. I think no judge, who took part in the decision of that case, doubted the soundness of the views expressed in the opinions upon this point. But, upon principle, how can any one be discharged from a valid obligation, by an agreement which is a nullity, and the enforcement of which the statute will not permit, when its vicious character is once shown ? The proposition seems to me, I confess, nothing short of a legal absurdity. It seems to

Draper *v.* Trescott.

be supposed that the subsequent case of *La Farge* v. *Herter*, (5 *Selden*, 241,) is an authority to show that the plaintiff will not be permitted to say that the agreement to extend is void, by reason of its usurious character. But that case, in my judgment, has no possible bearing upon the question here presented. There the question was whether the usurer should be permitted to bring the evidence of his own turpitude before the court, for the purpose of avoiding an agreement apparently valid. And the court held that he should not be allowed to prove the usury.

But no such question arises here. Here the usury is proved by the other side. There is no question as to the character of the agreement. The court sees that it is corrupt, and usurious, upon the defendant's own showing. And now, the question is, can the court pronounce such a contract obligatory, and of sufficient force in law, to discharge the defendant from a valid promise to pay? I think not, as long as the statute remains unrepealed. It is precisely the exception stated by Ruggles, Ch. J., in his opinion in *La Farge* v. *Herter*. He says: "A party to a fraud is estopped from setting it up for his own advantage; but if his opponent alleges and proves it as part of his own case, the guilty party will then be entitled to the benefit, while he incurs the disadvantage resulting from such a state of things." Here, however, there is no question of estoppel. It may be that we should hold the plaintiff estopped from proving the usurious character of the agreement to extend, for his own advantage in the action. But the other party having proved it, the plaintiff is not estopped from asking us to look into the statute, and give some heed to its provisions; nor are we estopped from applying the statute to the corrupt agreement, and declaring it void, on the plaintiff's suggestion. It is a great and radical mistake to suppose that this statute was designed as an instrument to be used in the hands of the needy and compliant borrower, only. It had its origin in far higher considerations of public policy; and the commonwealth has an interest in hav-

ing the statute fairly applied to every such contract, whether it operates, in the particular case, in favor of the borrower or lender. The statute was intended to prevent borrowing, as well as lending, at usurious rates. As the agreement to extend is clearly usurious, I see no other way than to say what the statute says, that it is void, and consequently had no effect upon the defendant's liability on the note.

                                        Judgments reversed.

[CAYUGA GENERAL TERM, June 6, 1859, *T, R. Strong, Smith* and *Johnson,* Justices.]